Lee, J.
Jacob Lamb filed his bill in the Circuit court of Augusta county, alleging that in the year 1841, being desirous of borrowing money, he applied to a certain Adam Wise of Rockingham county for a loan. That after some negotiation, Wise agreed to lend him the sum of 1200 dollars, upon which he was to pay the interest as it should annually accrue, and for the accommodation he was also to pay the said Wise, in addition to such interest, an usurious premium of 300 dollars. That with a view to cover and conceal the usurious character of the transaction, at the instance of the said Wise he executed two bonds to Jonathan Lamb, the son of the said Jacob, one for the sum of 1200 dollars, bearing interest from its date, which was the 10th of May 1841, and the other for the sum of 300 dollars, of the same date, both payable three years thereafter, the last named without interest; and that said bonds were at the same time assigned by the said Jonathan to the said Wise, though the assignments were untruly dated on the 14th, instead of the 10th. And that with a view still farther to cover up the transaction, the said Wise by agreement executed his bond to the said Jonathan Lamb, instead of advancing the money at the time, and subsequently, with the consent of the said Jacob, discharged the same and took it up. The bill then alleges that there was no other consideration for said bonds, and the whole arrangement thus made was a mere shift and device to evade the statute against usury. It further alleges that Wise assigned said bonds to one David Griffith, who afterwards assigned them to one Elijah Hogshead, who instituted suit upon them in the County court of Augusta. That he had intended to plead usury in said action, but that in consequence of the absence of his *296 counsel, and of information which had been received that no business would be done at the term during which he should have made this defence, the plea was not put in, and judgments were rendered against him for the amount of both bonds. The bill therefore makes Wise, Jonathan Lamb, (Griffith and Hogshead defendants; calls on Wise to answer all the allegations of the bill' specially, and prays that the court would render such a decree and afford him such measure of relief as the law and the principles of a court of equity will entitle him to demand.
It appears that an injunction was allowed to the judgment'mentioned in the bill, but the order granting the same is not copied into the record, nor does it otherwise appear when the same was allowed.
The defendant Wise answered the bill. He denies that the complainant applied to him for a loan in the year 1841, or that there was any negotiation or communication whatever between them for a loan, or that he had agreed to let him have 1200 dollars on loan, as stated in the bill, the interest thereon payable annually, or that there was any agreement for a usurious premium beyond interest, upon any loan. He alleges that such was not the substance of any contract between them, and that there was no shift or device of the nature stated in the bill, resorted to for the purpose of covering up a usurious transaction. He alleges that before the said bonds were assigned to him by Jonathan Lamb, he had learned both from him and from complainant, that such bonds existed, and that one or both of them proposed that he should purchase them; that he at first declined, though without knowing or suspecting that the bonds were accommodation bonds, or without consideration, but had at length agreed with Jonathan Lamb, whom he looked upon as the bona fide holder of the bonds, to give him 1200 dollars for them; the money to be paid as soon as he could get it, which *297 would be in a few days, and for which he was to give his own note to Jonathan, bearing interest from its date; the said Jacob Lamb agreeing, for the purpose - of enabling his son thus to cash the bonds, to secure them payment by a deed of trust on real property. He denies that a false date was given to the assignments of the bonds, with any improper design, and thinks they were made on the same day on which the deed of trust was executed, which was the 17th of May 1841. He repeats his denial that his purchase of said bonds was, either in form or substance, a loan of money; and avers that if they were without consideration it was unkown to him, and only known to the. Lambs; and that the transaction was on his part a fair and bona fide purchase of the bonds at a reasonable, discount.
On filing his answer, (to which there was a general replication,) the said Wise gave notice of a motion to dissolve the injunction which had been allowed, to be. made at the then next term.
The .defendants Griffith and Hogshead also severally answered the bill, and gave notice of a motion to dissolve. They say that they have no personal knowledge whatever of the charges contained in the. bill; that they bought the bonds respectively for fair consideration, without knowledge of any such equity as that set up in the bill, but believed them to have been executed on a full and fair consideration. The defendant Griffith also states that after the bonds had been assigned to him he called on the complainant and so advised him, and that complainant admitted they were all right, and said they should be paid when they became due. Both defendants put the allegations of the bill in issue, and call for strict proof thereof.
Sundry depositions were taken and filed on behalf of the complainant;, and, on the 12th of June 1845, *298 the defendants moved to dissolve the injunction. This motion was heard on the bill, answers, exhibits and depositions of witnesses : whereupon the court, by an order of that day, dissolved the injunction as to the principal of the judgment for the 1200 dollars, but overruled the motion as to the damages, interest and costs upon that judgment, and as to the whole judgment for the 300 dollars. On the 15th of November 1845, the defendants moved the court to dissolve the injunction also as to the 300 dollars judgment, and as to the damages, interest and costs upon the judgment for 1200 dollars; and this motion having been heard as that at the former term, was overruled by the court; and an issue was then directed to be made up and tried by a jury, to ascertain and determine whether the two bonds in controversy, dated on the 10th of May 1841, were executed upon a usurious consideration, as alleged by the bill. Subsequently this issue was tried by a jury, and a verdict was rendered to the effect that the said bonds were in fact executed upon a usurious consideration, as alleged by the bill. And the cause coming on to be finally heard on the 13th of June 1849, on the papers formerly read, and the verdict of the jury upon the issue that had been directed, the court pronounced its decree perpetuating the injunction as to the judgment for the 300 dollars and costs, and as to the damages, interest and costs upon the judgment for the 1200 dollars, and for costs in favor of the complainant against the defendants, including those incurred on the trial of the issue. And from this decree Wise applied for and obtained an appeal to this court; and complains that the Circuit court erred in overruling the motion to dissolve both at the June term and the November term 1845, and also in directing at the latter term the issue to be tried by a jury. He also alleges that the verdict was defective in not ascertaining the extent of the alleged *299 usury, and was therefore too vague and uncertain to warrant the decree pronounced by the court; and that said decree was furthermore erroneous in not allow- ' ing him the legal interest at least upon the principal sum due.
The deposition of Jonathan Lamb, the obligee and assignor of the two bonds of Jacob Lamb, had been taken and filed in the cause; but the defendants excepted to its being read as evidence in the cause: And it is very clear that it was not competent testimony, this court having expressly decided that in a controversy between the obligor and assignee of a bond on a question of usury, the obligee is not a competent witness to prove the usury. Gilliam v. Clay, 3 Leigh 590. The testimony of Jonathan Lamb being then out of the case, the only testimony before the chancellor at the hearing of the motion to dissolve the injunction in June 1845, was the evidence of the witnesses Long, Crawn and Hill. Long proved merely that the Lambs resided within two or three miles of Wise, and that Jacob Lamb’s wife was a cousin of Wise; that he thought Jonathan Lamb was worth little or nothing in 1841; and that he had heard Jacob say, some twelve months previously, that he had sold his homestead to his two sons, Jonathan and David.
Crawn merely proved that in 1841, Jonathan Lamb was regarded as worth little or nothing; that about that time he had sold him a lot of oats, but that he required security for the amount, more, however, because of his supposed unwillingness than his want of ability to pay.
Hill proved that in 1841 and 1842 Jonathan Lamb had little or no property, and was generally scarce of money; that Jacob Lamb, for eight or ten years previously, always had an abundance of property in his possession, but was always hard run for money;. and that he would not have thought it probable that Jacob *300 Lamb could have owed Jonathan in 1841 a bona fide debt of 1500 dollars. He also stated that he had heard Jonathan Lamb’s • character for truth and honesty spoken of unfavorably.
Now, giving to this testimony its fullest weight and widest latitude for inference, it is impossible to say that it makes out the charge of usury contained in the bill, or overthrows or even shakes the positive, direct and express denial of that charge, and of the facts and elements in which the supposed usury was alleged to consist. In truth? it amounted to nothing more than-proof of certain circumstances, which, aided by and in connection with other and more pointed and cogent proofs, might tend to make out a case of usury ,• but which, by themselves and unaided, were exceedingly ■trivial and of very little weight, and all perfectly reconcilable with the answer of Wise, and the fairness of the transaction that was called in question. They served to raise, at the most, but a bare suspicion as to the fairness of the transaction. In effect the case presented on the motion to dissolve upon those proofs, was the ordinary one of a bill, all the material allegations of which were met by a full, direct and explicit denial in the answer, and no evidence adduced to sustain them, or to destroy the effect which the law gives to such an answer. Such an answer is not only evidence for the defendant, but it is conclusive in his favor, unless overcome by the satisfactory testimony of two opposing witnesses, or of one witness corroborated by other facts and circumstances equivalent in weight to a second witness ; and where not so overcome, the court will neither make a decree nor send the case to be tried at law, but will simply dismiss the bill. Story’s Eq. Jur., § 1524; Thornton v. Gordon, 2 Rob. R. 719 ; Beatty v. Smith, 2 Hen. and Munf. 395 ; Smith v. Brush, 1 John. Ch. R. 459 ; Lenox v. Prout, 3 Wheat. R. 520 ; Pryor v. Adams, 1 Call 382 ; Alam v. *301 Jourdan, 1 Vern. R. 161; Pember v. Mathers, 1 Bro. Ch. R. 52. In cases of injunction, if, upon hearing the motion to dissolve, the court is of opinion that it was improperly granted, or where the facts on which the plaintiff’s equity rests are denied, or the case made by the complainant is not supported, the injunction should be dissolved. 3 Dan. Ch. Pr. 1896; Ches. & O. C. Co. v. Balt. & O. R. R. Co., 4 Gill and John. 1; Livingston v. Livingston, 4 Paige’s R. 111; Wakeman v. Gillespy, 5 Paige’s R. 112. It is true it is said by Judge Story, in Poor v. Carleton, 3 Sumn. R. 75, that extraordinary circumstances may exist in a particular case which would not only justify but demand, in the exercise of a sound discretion on the part of the court, the continuation of a special injunction, notwithstanding the denial in the answer of the whole merits of the bill. In this case, however, no circumstances of an extraordinary character are to be found, calling for the exercise of the discretion of the court in continue ing the injunction against the defendant’s motion to dissolve ; and I am of opinion they were clearly entitled to a dissolution of the same, both at the June term and at the November term, when their motion to that effeet was made and repeated.
And while I cannot perceive any sufficient ground for overruling the motion to dissolve the injunction, I am equally unable to find in the case sufficient reason for the order directing an issue to try the question of usury. It is true that directing an issue to be tried by a jury is said to be a matter of discretion in the court of equity, to be exercised upon due deliberation ; and the expense and delay which it involves are only to be incurred where the court, in the exercise of a sound discretion, may think it necessary, except in certain particular cases in which, by statute or practice,. it is made a matter of right; as a bill by an heir at law impeaching a will, or (in England) one by a *302 rector or vicar to try the validity of a modus or composition in lieu of tithes. Short v. Lee, 2 Jac. and Walk. 464, 495. But it is well settled that a mistake in the exercise of the discretion of the court upon this subject, is just ground of appeal. That discretion is to be exercised upon sound principles of reason and justice, and the appellate court must judge whether it has been so exercised in a given case. Stannard v. Graves, 2 Call 369 ; Nichol v. Vaughan, 5 Bligh. Par. Cas. N. S. 505; Dale v. Roosevelt, 6 John. Ch. R. 255 ; Townsend v. Graves, 3 Paige’s R. 453 ; Gardner v. Gardner, 22 Wend. R. 526; Belknap v. Trimble, 3 Paige’s R. 577, 601. The general rule laid down upon this subject is, that whenever a material matter of fact in the cause is strongly controverted in evidence, the court may properly direct an issue; as where a material fact positively denied by the answer is supported by the evidence of a single witness with corroborating circumstances, the court will give the defendant, if he ask it, an opportunity of trying the question upon an issue. But in such a case the defendant may decline an issue, and the court is then bound to give judgment upon the whole evidence before it. East India Company v. Donald, 9 Ves. R. 275. So where the evidence is conflicting, or there is contradictory evidence between persons of equal credit and equal means of information, and the evidence is so equally balanced that it becomes doubtful which scale preponderates, an issue will be proper. 2 Daniels’ Ch. Pr. 1285. There is a class of cases, as has been intimated, in which the court will direct issues, although there be no> contradictory testimony, where the parties are invested at common law with certain rights, of which the matter in issue is intended to' divest them. Of these are the cases already referred to, of an heir at law seeking to set aside a will by which he is disinherited, and who by practice in Eng *303 land, and by statute in Virginia, is entitled to an issue devisavit vel non, and of a rector or vicar in England, who, by the practice, is held entitled to an issue to try the validity of a modus or composition set up in lieu of tithes. 3 Daniels’ Ch. Pr. 1287 ; Banks v. Booth, 6 Munf. 385; Van Alst v. Hunter, 5 John. Ch. R. 148 ; Rogers v. Rogers, 3 Wend. R. 503, 515. But in all other cases, whether an issue should be directed or not, must depend on the sound discretion of the chancellor. Where an important fact is left doubtful by the testimony, the court ought to direct an issue. Marshall v. Thompson, 2 Munf. 412 ; Bullock v. Gordon, 4 Munf. 450 ; Nelson v. Armstrong, 5 Gratt. 354. But I apprehend that where the facts upon which the equity of the bill rests are directly denied and controverted by the answer, and the plaintiff’s case is wholly unsupported by proof; or if there be evidence on his part, it is wholly insufficient to make out his case against the positive denial of the defendant, (without considering at all any evidence that may be offered by the defendant,) it is clearly improper to direct an issue. There are, it is true, some few cases to be found in which issues appear to have been directed because the proofs offered by the complainant were not deemed entirely satisfactory to the court. In the case of Moons v. De Bernales, 1 Russ. R. 301, and Kaison v. The Same, Ibid., the evidence offered by the plaintiffs was not sufficient proof of their title to the bales of wool in controversy in the causes, and issues were directed by the master of the rolls. But in these cases the defendant admitted by his answer that he had sold the wools and received the money, and set up no adverse claim, but merely called for proof of plaintiff’s title. In the case of Townsend v. Graves, 3 Paige’s R. 453, the chancellor, in delivering his opinion, speaks of issues being directed in cases where there was a want of evidence. What particular eases *304 he intended, however, is not explained, and what he said upon the point was entirely obiter. These cases seem to be in direct conflict with the rule as laid down by the Lord Chancellor in Savage v. Carroll, 1 Ball and Beat., 283, 550. He there states it to be, that where there is contradictory testimony in a case that raises a doubt in the mind of the court: that is to say, where the case is fully proved by the party on whom the onus of proof lies, but that proof shaken or rendered doubtful by the evidence on the other side, there the court will direct a reference or an issue to ascertain the fact. But where there is no evidence whatever, to direct an issue would be to hold out an opportunity to a party to supply the defect by fabricated testimony, and introduce mischiefs intended to be guarded against by the rules of the court.
In the case of the New Orleans Gas Light and Banking Co. v. Dudley, 8 Paige’s R. 452, it was held that a question of usury arising out of disputed faets, upon the determination of which the complainant’s right to relief depended, was a proper case for granting an issue before the testimony in the cause was taken: but this was under the provisions of a statute passed in that state (New York) in 1838, making it the imperative duty of the court to direct an issue upon the application of either party in every case in which an issue of fact suitable for the trial -of a jury could be framed. And the chancellor, in delivering his opinion, said that the court, prior to the act of 1S38, was not authorized to grant an issue except in a few specified cases, until after the testimony was taken; and then it was not the practice to direct an issue unless there was conflicting evidence so as to create a doubt in the mind of the chancellor, upon some matters of fact. And he added that it might be necessary for the court to direct an issue in that case upon the hearing, if there were such a conflict in testimony as to render it doubt- *305 ful whether the transaction referred to (the sale of certain property) was or was not a mere device to obtain an usurious advantage. He referred to the cases Marshall v. Thompson, 2 Munf. 412 ; Bullock v. Gordon, 4 Id. 450; Douglass v. McChesney, 2 Rand. 109. In other cases, the failure of the plaintiff’s proof, or its insufficiency to overcome the direct denial of the defendant’s answer and make out his case, is distinctly considered as not a proper case for an issue. In Pember v. Mathers, 1 Bro. Ch. R. 52, the lord .chancellor says, where the defendant in express terms negatives the allegations of the bill,- and the evidence is only of one person affirming the allegations so negatived, the court will neither make a decree nor send the case to a trial, at law. So where the party seeking specific performance fails to prove the terms of the agreement he relies upon, the court will not direct an issue to ascertain the terms. Savage v. Carroll, 2 Ball & Beat. 451. Nor is a party entitled to an issue or an enquiry to establish a case relied on by his pleading, but omitted in proof. Savage v. Carroll, 1 Ball & Beat. 283, 548. Judge Story lays down the doctrine in almost the same terms as stated by the lord chancellor in Pember v. Mathers, Story’s Eq. Jur., § 1528. In 2 Madd. Ch. Pr, 443, the rule is stated to be, that if the defendant plainly and precisely deny an assertion in the bill, and one witness proves it as positively, clearly and precisely as it is denied, no decree for relief can be made. Whatever may be the practice elsewhere as to' the cases appropriate for an issue, and in which the discretion of' the chancellor is wisely and properly exercised -in directing it, there can be -little doubt that in Virginia, where the allegations of the bill are expressly and directly denied in the answer, and are wholly unsupported by proof, or supported by the evidence of .one witness only, the court should not direct an issue, b.u-t should dismiss the bill. Pryor v. Adams, 1 Call 382 ; *306 Paynes v. Coles, 1 Munf. 396, (Judge Roane’s opinion.) And the case of a bill seeking relief against usury • constitutes no exception to the rule; and the propriety of directing an issue in such a case depends upon the same considerations which apply in others of whatever character. Whether the object of a bill of that character be to obtain relief upon the principle of Marks v. Morris, or under the third section of the act of 1819, if the alleged usury be denied in the answer, proof is indispensable ; and if it be not produced the result is the same as in any other case. All that the eourt can do, and what it properly should do, is to dissolve the injunction (if one have been allowed) and dismiss the bill. Gilliam v. Clay, 3 Leigh 590. And the proof which is required to avert this result, must be as in other cases, the testimony of two witnesses, or if there be but one, his testimony must be supported by corroborating circumstances. Thornton v. Gordon, 2 Rob. R. 719. In the case of Grigsby v. Weaver, 5 Leigh 197, which was a bill for relief against a contract alleged to be usurious, the date of the loan'became a very material matter to determine the question of usury. The defendant had been specially called on to give the information to fix this date. He stated in his answer that he had taken no memorandum and could not speak as to the time : and the plaintiff could bring no witness to prove it. The chancellor directed an issue. Judge Carr, in delivering the opinion of the court, said: “Issues are not directed to enable parties to get a new supply of evidence where they have not enough, but where there is clashing and conflicting evidence leaving the fact in doubt and rendering it necessary to weigh the character and credibility of witnesses.” — “ In this case,” he proceeded, “ there is no clashing. The point was to fix usury in the bond of May 1817. To show this usury, the date of the loan must be somehow fixed. The defendant said he *307 could not speak as to the time, and the plaintiff could bring no witness to speak as to this date. Here there was a clear defect of proof; a failure to establish the very point on which the usury and the quantity of it depended. It is the bounden duty of a plaintiff who calls for the solemn judgment of a court, to furnish that court with something like certainty to rest that judgment upon; he may draw this from the defendant if he can; he may prove it by witnesses; he may establish it by documents; but in some way he must shew it or he fails, and his bill should be dismissed.” “ This is,” he adds, “ in my mind, that case; and instead of an issue, the bill ought to have been dismissed for defect of proof.” Judge Brooke, in his opinion, expressed similar views, and thought the chancellor, instead of directing an issue, should have dismissed the bill. The case of Thornton v. Gordon, 2 Rob. R. 719, was. an injunction to stay the sale of property conveyed to secure a debt alleged to be usurious, and the complainant averred his readiness to make full proof of the allegations of his bill, and disclaimed all benefit of a discovery from the defendant. The defendant filed his answer denying the allegations of the bill. The complainant offered the testimony of but a single witness, unsupported by corroborating circumstances. The court held that to deny the allegations of the bill by his answer, was the privilege of the defendant from his position as defendant, called on to answer and make up an issue, and that the plaintiff could not, by waiving a discovery, deprive him of the benefit of it. That benefit consisted in putting the complainant to proof of his cause by two witnesses or one witness and corroborating circumstances. That not having been furnished, the court was of opinion not that an issue should be directed, but that the injunction should be dissolved and the bill dismissed. And in the case of Reed v. Cline’s heirs, decided during *308 the present term of this court, supra 136, the same docfrine held by Judges Carr and Brooke, in the case of Grigsby v. Weaver, was distinctly asserted. That was a bill to set up a lost title bond, and to obtain a decree for a conveyance of the land alleged to have been sold according to its terms. The complainants were put to proof of the allegations of their bill, but the evidence offered was very unsatisfactory as to the facts, whether such a title bond ever existed, or if it did, whether it had been assigned to the ancestor of the complainants, as they claimed, and whether it had been lost, as. alleged, and also as to the' contents of the bond, and whether the defendant had notice of its existence before his purchase; and the court below directed an issue to ascertain those facts. The defendant appealed, and this court held that as there was no clashing or conflict in the testimony, but simply a failure on the part of the complainants to meet the call made upon .them for full proof of the allegations of their bill, and to make out their case, it was not such a case as rendered an issue necessary or proper; and that the court below should have dismissed the bill, instead of directing an issue for the purpose; and it was so decreed here accordingly.
With these views, and upon the authority of the cases which I have cited, I am of opinion that the Circuit court erred in directing the issue by its order of the 15th of November 1845, and that instead of directing such issue it should have dissolved the injunction, and, if the case were ready for final hearing, have dismissed the bill.
But the jury, upon the trial of the issue, have found a verdict affirming that the transaction impeached by the bill was in fact usurious as therein alleged; and the question arises what decree the court1 should render upon the whole case, including the verdict so found. It may be argued that the defendant, *309 not having formally and expressly objected to the order directing the issue, nor taken an appeal from it at the time to this court, but having gone to trial of the issue before the jury, may be regarded as having waived all objection to the order for the issue, and that the irregularity, if any, in its direction, has been thus fully cured; that the error of the court, if it did err in directing the issue, was but in the exercise of the discretion with which it was invested, and that the decree granting relief conformably to the verdict should not for this cause be now disturbed. Factum valet, fieri non debet. But I do not concur in this reasoning. The defendant asked for the dissolution of the injunction, to which, as I think, upon the case before the court, he was justly entitled. The court overruled his motion, and proceeded not upon his motion nor that of the complainant, but because it thought it was proper so to do, to direct an issue to try the question of usury. The defendant could but submit to the order. He was not required to express any objection, and although he might have appealed from it to this court as an order to a certain extent settling the principles of the case, and if erroneous, improperly involving him in the delay, trouble and expense necessarily incident to a trial by jury, (as held by this court in the case of Reed v. Cline's heirs.) Yet he was not bound to take his appeal at that time. He had a right, if he chose to await the final hearing of the cause, to take a part in the trial before the jury, or, if he pleased, wholly to abstain from doing so, and take his chance, if the verdict should prove adverse, to obtain redress non obstante veredicto, upon the final hearing of the cause; or, if he failed in the Circuit court, by an appeal to the court of appellate jurisdiction. Whether he took a part or not in the trial of the issue before the jury, does not appear, as the record of that trial is not embraced in the record before us; but *310 whether he did or did not I think immaterial, as, either wa7> ^ conceive he lost no right which he could other-claim, nor is to be held as acquiescing in the irreguiar order directing the issue. But this I regard as n0 longer an open question or a subject of further discussion. In the case of Pryor v. Adams, 1 Call 382, the bill was filed to compel payment of the amount of depreciation on a bond which the complainant had held on the defendant, and of which he had consented to receive and had received payment in depreciated paper money, and had surrendered up the bond upon an express promise which he alleged the defendant made at the time, to pay the depreciation. The defendant in his answer denied the alleged promise. The chancellor held that the allegations of the bill which were denied by the answer had not been proved by the evidence, and dismissed the bill with costs; but he afterwards, during the same term, set aside that decree and directed an issue to determine whether the defendant, at the time the money paid in discharge of the bond in the bill mentioned was received or after, agreed to allow the depreciation. The issue was tried, and the jury found that the defendant had agreed to allow it. The court thereupon decreed that the defendant should pay the amount of the depreciation and the costs, and the defendant appealed. And it was held in the Court of appeals that the complainant having failed to overcome the defendant’s denial in his answer and to support the allegations of his bill by proof, the first decree dismissing the bill was right and should be affirmed; and that notwithstanding the verdict for the plaintiff, the order directing the issue and all the subsequent proceedings should be reversed : and it was so decreed accordingly. In the case of Collins v. Jones, 6 Leigh 530, an issue was directed and a verdict was found in favor of the complainants, and relief thereupon decreed. This court held that the issue was *311 improperly directed; and that notwithstanding the verdict in favor of the complainant, the decree should be reversed, the injunction dissolved, and the bill dismissed: and it was so decreed accordingly. These cases have never been overruled, nor, so far as I am aware, even questioned in any subsequent case, and I regard them as binding authorities of themselves, and as prescribing a rule having its foundation in just rear son and a wise policy ; and they seem to me directly to rule this case. I am of opinion, therefore, that the Circuit court erred in decreeing relief to the complainant on the final hearing of the cause; and that it should then have repaired the error previously committed, by dissolving the injunction notwithstanding the verdict, and dismissing the bill.
With regard to the questions of the measure of relief to be afforded in a case of this kind, and the sufficiency of the verdict to authorize the decree pronounced by the court, I deem it unnecessary to express any opinion, as, in the view which I take of the case, neither of those questions properly arises in the cause; the complainant not having shown himself entitled to any relief, or to an issue to try the question of usury when the order for it was made by the court.
I am of opinion that the decree should be reversed with costs to the appellant; that the order directing the issue .and the verdict of the jury should be set aside; that the injunction should be wholly dissolved, and the bill dismissed with costs to the defendants in the Circuit court.
The other judges concurred in the opinion of Lee, J.
Decree reversed.